UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ORLANDO DEMETRIUS MITCHELL,

          Plaintiff,

v.

FRANK LAMARCA, *et al.*,

          Defendants.
_____/

Civil Action No. 23-10325

David M. Lawson
United States District Judge

David R. Grand
United States Magistrate Judge

### REPORT AND RECOMMENDATION TO GRANT DEFENDANT DARREL BARROWS, N.P.'S MOTION FOR SUMMARY JUDGMENT (ECF No. 47)

On January 23, 2023, Plaintiff Orlando Mitchell ("Mitchell"), an inmate of the Michigan Department of Corrections ("MDOC") currently incarcerated at the G. Robert Cotton Correctional Facility, filed this *pro se* civil rights complaint under 42 U.S.C. § 1983.[1] (ECF No. 1). Pursuant to 28 U.S.C. § 636(b), all pretrial matters have been referred to the undersigned. (ECF No. 11). In his operative amended complaint, Mitchell alleges, in relevant part, that defendant Darrel Barrows, N.P. ("NP Barrows") violated his rights under the Eighth Amendment. (ECF No. 13).[2]

---

[1] Mitchell's case was transferred to this Court from the United States District Court for the Western District of Michigan on February 8, 2023. (ECF No. 3).

[2] Mitchell's operative amended complaint also asserts claims against an unspecified number of John and Jane Does, and a number of other individuals and entities. (ECF No. 13). On February 27, 2024, the undersigned issued a Report and Recommendation to dismiss most of those other individuals and entities, leaving only Allegiance Hospital, Frank Lamarca, M.D., the John and Jane Does, and NP Barrows as defendants in this case. (ECF No. 26). That Report and Recommendation has been adopted. (ECF Nos. 30, 38). Moreover, on September 20, 2024, this Court issued a second Report and Recommendation, this time to grant a motion to dismiss filed by Allegiance and Dr. Lamarca. (ECF No. 52). That Report and Recommendation remains pending.

Now before the Court is a Motion for Summary Judgment Based Solely on the Failure to Exhaust Administrative Remedies, which was filed by NP Barrows on August 15, 2024. (ECF No. 47). Mitchell filed a response to this motion, as well as a supplemental brief, and NP Barrows filed a reply brief. (ECF Nos. 49, 50, 55).[3]

Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. LR 7.1(f). Here, the Court finds that the facts and legal issues are adequately presented in the parties' briefs and on the record, and it declines to order a hearing at this time.

I. **RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that NP Barrows' Motion for Summary Judgment **(ECF No. 47)** be **GRANTED**.

II. **REPORT**

   A. **Factual Background**

In his amended complaint,[4] Mitchell alleges that, in 2018, while he was incarcerated at the St. Louis Correctional Facility ("SLF") in St. Louis, Michigan, he experienced a sharp pain emanating from a lump in his lower back. (ECF No. 13, PageID.26). After "SUFFERING THIS PAIN FOR A FEW MONTHS,"[5] Mitchell was seen by an outside

---

[3] On October 16, 2024, the Court received Mitchell's "Response to Defendant's [] Reply to Plaintiff's Response to His Motion for Summary Judgment." (ECF No. 57). Although the Court recognizes that this filing is an unauthorized sur-reply brief and could be stricken, given Mitchell's *pro se* status, the Court will consider the filing's contents in ruling on the underlying motion.

[4] Attached to Mitchell's amended complaint is a copy of his original complaint. Thus, the Court will consider the allegations contained in both filings when evaluating NP Barrows' motion.

[5] In quoting from Mitchell's filings, the Court will do so verbatim, including misspellings, fonts,

specialist, Allegiance neurosurgeon Dr. Lamarca. (*Id.*, PageID.27). On Dr. Lamarca's orders, a CT scan and MRI were performed. (*Id.*). Mitchell then consented to Dr. Lamarca's recommendation that surgery be performed to remove "THE LUMP IN HIS LOWER BACK (RIGHT SIDE)" and a cyst "WHICH WAS WRAPPED AROUND HIS SPINE." (*Id.*).

Dr. Lamarca performed the surgery at Allegiance on February 4, 2020. (*Id.*, PageID.40-41). According to medical records attached by Mitchell to his amended complaint, several surgical procedures were performed that day, including L2-3 transverse lumbar interbody fusion from the right, interbody biomechanical device placement, non-segmental posterior fixation, and right complete foraminotomy and resection of cyst. (*Id.*, PageID.40; *see also id.*, PageID.44-49). Despite what the medical records reflect in terms of the surgical procedures performed, Mitchell alleges that Dr. Lamarca performed "the improper surgical procedure of a spinal infusion instead of the proper sergical procedure to remove the cist from the Plaintiff's lower back right side and never made actions to correct the mistake before discharging Plaintiff from the hospital and taking him off medical hold at the prison housing facility of SLF."[6] (ECF No. 41, PageID.315).

---

and improper capitalization or punctuation, to ensure statements are not taken out of context.

[6] According to Mitchell, after the surgery, Dr. Lamarca informed him that some unidentified "MISTAKE" had been made; that Dr. Lamarca had believed there were cysts on Mitchell's spine; and that he "SENT THEM TO THE LAB TO BE TESTED …." (ECF No. 13, PageID.27). Mitchell claims, however, that he has never received a report with the "FINAL RESULT" of this testing. (*Id.*, PageID.27-28). Mitchell also alleges that, at some point, he was transferred to the Kinross Correctional Facility ("KCF"), where he saw Dr. Timothy Stallman, who performed a "COMPLETE PHYSICAL EXAMINATION OF HIS BACK" and concluded that "JUST LOOKING AT THE XRAYS, IT SHOWED THAT THE SURGEON [Dr. Lamarca] DID NOT

3

Elsewhere, however, Mitchell alleges – somewhat inconsistently – that it was NP Barrows who sent him back to "THE FACILITY [HE] HAD COME FROM," "authorized the plaintiff to be taken off medical hold," and placed him "ONLY ON A PERMANENT LOWER BUNK DETAIL." (ECF No. 13, PageID.21, 29). Indeed, Mitchell's most specifically articulated allegation against NP Barrows, taken from his response to NP Barrows' motion, is as follows:

> … Darrel Barrows reviewed MD Lamarca reports, seen that Plaintiff did not have the right surgery of a cist to had been surgically removed from Plaintiff's lower back right side and did not act accordingly to alert officials of the report to proper authorities that prisoner Plaintiff did not have the surgery to his lower back right side and that Plaintiff still is need of the right surgery (INDIFFERENCE), yet still intentionally not induce such information mislead the proper authorities under false pretenses to take prisoner Plaintiff off medical hold (DELIBERATELY).

(ECF No. 41, PageID.317; *see also* ECF No. 13, PageID.29 (alleging that NP Barrows authorized Mitchell's transfer back to SLF, "ONLY" placing him on a permanent lower bunk detail)). Thus, Mitchell's Eighth Amendment claim against NP Barrows stems solely from his allegation that, despite learning that the surgery performed by Dr. Lamarca did not go as expected and was not entirely successful, he authorized Mitchell "to be taken off

---

KNOW WHAT HE WAS DOING, HE [presumably Dr. Stallman] PERSONALLY DETERMINED WHAT THE CAUSE OF THE PAIN WAS IN PLAINTIFF'S LOWER BACK (**RIGHT SIDE**), AND THE LUMP IS STILL PRESENT, AND HAD NOT BEEN REMOVED." (*Id.*, PageID.29). Mitchell alleges that the lump is continuing to grow and that he now suffers from partial paralysis in his right inner thigh. (*Id.*, PageID.30). In light of Mitchell's assertions, on October 2, 2024, the Court held a Zoom status conference with Mitchell and counsel to both Dr. Lamarca and NP Barrows. Because neither counsel represents prison employees, they were unable to ensure that Mitchell was promptly seen for his complaints. However, a prison guard joined the Zoom and indicated that she would arrange for Mitchell to forthwith be brought to health care.

4

medical hold," leaving him in ongoing pain. (ECF No. 13, PageID.21).

### B. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative

showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

### C. Analysis

In his motion, NP Barrows argues that summary judgment is warranted on Mitchell's Eighth Amendment claim against him because Mitchell failed to properly exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (ECF No. 47). The Court agrees.

#### 1. The PLRA's Exhaustion Requirement

Under the PLRA, a prisoner may not bring an action, "under [§ 1983] or any other Federal law," to challenge his conditions of confinement until all available administrative remedies have been exhausted. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court. *See Woodford*, 548 U.S. at 89. The Supreme Court has held that this "exhaustion requirement requires proper exhaustion." *Id.* at 93. Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009).

### 2. The MDOC's Exhaustion Procedures

In determining whether a plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 200. In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances" (the "Policy"). (ECF No. 47-2). A state prisoner must first complete the process outlined in the Policy – including pursuing a grievance through "all three steps of the grievance process" – before he can file a lawsuit challenging the alleged unlawful conduct. (*Id.* at ¶ C). The Policy provides that if a prisoner cannot resolve his dispute with the staff member involved, he has five business days to file a Step I grievance. (*Id.* at ¶¶ Q, W). If the prisoner is dissatisfied with the Step I response, he may submit a grievance appeal to the Step II Grievance Coordinator within ten business days after receipt of the Step I response, or if no timely response is received, within ten business days of the date the response was due. (*Id.* at ¶ DD). If the grievant is dissatisfied with, or does not receive, a Step II response, he has ten business days within which to file a final appeal at Step III. (*Id.* at ¶ HH). Again, an inmate may only pursue a claim in court if he has complied with his obligations at each of these three steps. (*Id.* at ¶ C).

### 3. Mitchell Fails to Raise a Genuine Issue of Material Fact as to Whether He Properly Exhausted his Claim Against NP Barrows

In his motion, NP Barrows argues that Mitchell did not properly exhaust his Eighth Amendment claim against him because Mitchell did not pursue, through Step III, any grievances against him regarding his allegation that NP Barrows was deliberately

7

indifferent in authorizing Mitchell to be taken off medical hold. (ECF No. 47, PageID.351-55) (citing ECF No. 13, PageID.21). In support of his motion, NP Barrows provides a copy of Mitchell's "MDOC Prisoner Step III Grievance Report," as well as underlying documentation, which together show that, prior to the filing of his complaint in this case, Mitchell pursued only two grievances through all three steps of the MDOC's grievance procedure. (ECF No. 47-1). Of these two grievances, only one is even arguably relevant to the claims at issue in this case – Grievance No. SLF-21-10-0897-12d1 ("Grievance 0897"), but as shown below, it did not exhaust Mitchell's Eighth Amendment claim against NP Barrows. (*Id.*, PageID.373).

Specifically, on October 22, 2021, Mitchell submitted Grievance 0897 at Step I, alleging as follows:

> I've kited medical numerous of times about this lump in my lower back that has been causing me pain. I was scheduled for the lump to be removed on 02-04-20[20] when I went in for surgery to have another internal foreign growth wrapped around my spine. The lump in my lower back and was not removed at surgery and *Dr. Barrows informed on the week of 08-24-2021 that the surgeon must have cut a nerve that causes my right leg to be partially paralyzed*.

(*Id.*) (emphasis added). On November 3, 2021, Grievance 0897 was denied at Step I because Mitchell had not voiced any complaints related to his back since August 26, 2021, despite being instructed at that time "to notify health care of any complaints regarding [his] back to be scheduled for an evaluation." (*Id.*, PageID.374).

In Mitchell's Step II appeal of Grievance 0897, there is no mention whatsoever of NP Barrows; rather, Mitchell again accuses "the surgeon" (i.e., Dr. Lamarca) of "neglecting to perform proper care which lead to [his] right leg being paralized on the inner

8

thigh." (*Id.*, PageID.371). Mitchell further alleges: "The surgeon also failed to perform the surgery by admitting he was wrong about what he believed was a cist. Healthcare was notified promptly and knew I needed further treatment." (*Id.*). Mitchell's Step II appeal was denied on December 29, 2021, as a review of Mitchell's electronic medical record indicated that after he had complained of ongoing pain in his back in February and April 2021, a CT scan of his lumbar spine was performed on May 18, 2021. (*Id.*, PageID.372). Results of this test were reviewed by the on-site medical provider and "forwarded to the neurosurgeon who performed grievant's back surgery" (i.e., Dr. Lamarca). (*Id.*). Apparently, Dr. Lamarca determined that no further intervention was warranted.[7] (*Id.*). Mitchell appealed Grievance 0897 to Step III, but it was rejected as untimely, as it was due on January 13, 2022, and not received until January 27, 2022. (*Id.*, PageID.370).

In his motion for summary judgment, NP Barrows argues that Grievance 0897 does not exhaust Mitchell's claims against him for two reasons: (1) because Mitchell's appeal was rejected as untimely at Step III; and (2) because Grievance 0897 does not relate to the Eighth Amendment claim Mitchell now brings against NP Barrows. (ECF No. 47, PageID.353-55). Because the Court finds merit to the latter argument, it need not address

---

[7] Subsequently, however, Mitchell was again evaluated by SLF's nursing staff on November 14, 2021, after he complained of an acute onset of back pain, at which time he was provided two injections (which he reported "helped" ease his symptoms). (ECF No. 47-1, PageID.372). Medication (diclofenac) was also ordered, but Mitchell reported an adverse reaction. (*Id.*). Thus, diclofenac was discontinued on December 9, 2021, and meloxicam was ordered. (*Id.*). However, that same day, Mitchell was transferred to KCF, and, thus, he did not receive meloxicam on that date. (*Id.*). In the Step II grievance response, it was further indicated that KCF health care had been instructed to determine whether further treatment of Mitchell's back pain was necessary and to provide Mitchell with meloxicam if it was deemed warranted. (*Id.*).

9

the merits of the former.[8]

It is clear from a reading of Grievance 0897 that it is not at all related to Mitchell's instant claim against NP Barrows – namely, that NP Barrows was deliberately indifferent to a serious medical need when he allegedly took Mitchell off medical hold shortly after his back surgery in February 2020. Rather, in Grievance 0897, dated October 22, 2021, Mitchell merely alleges that NP Barrows "informed" him that *"the surgeon" (Dr. Lamarca)* did not properly perform the surgery:

> I've kited medical numerous of times about this lump in my lower back that has been causing me pain. I was scheduled for the lump to be removed on 02-04-20[20] when I went in for surgery to have another internal foreign growth wrapped around my spine. The lump in my lower back and was not removed at surgery and *Dr. Barrows informed on the week of 08-24-2021 that the surgeon must have cut a nerve that causes my right leg to be partially paralyzed*.

(ECF No. 47-1, PageID.373) (emphasis added).

Clearly, the grievance does not allege any wrongdoing on the part of *NP Barrows* and, indeed, makes no mention of NP Barrows having taken him off medical hold, let alone having done so prematurely.

---

[8] In his motion for summary judgment, NP Barrows argues that Grievance 0897 was not properly exhausted because the MDOC rejected it at Step III as untimely, rather than providing a merits-based response at all three steps of the grievance process. (ECF No. 47, PageID.353-54). It is true that a grievance that is properly rejected as untimely does not exhaust the claims contained therein. *See Bowling v. Wellpath Inc.*, No. 22-11897, 2023 WL 6546665, at *7 (E.D. Mich. June 21, 2023) (citing *Lewis v. Greason*, No. 21-11939, 2023 WL 2949998, at *4 (E.D. Mich. Feb. 15, 2023)). Mitchell vehemently disagrees that his Step III appeal of Grievance 0897 was untimely, pointing out that he was transferred between SLF and KCF while his Step II appeal was pending, and arguing that his Step III appeal was timely filed pursuant to the prisoner "mailbox rule" because he submitted it to KCF's mailroom staff on January 13, 2022. (ECF No. 50, PageID.394-96). While not entirely clear, the Court will assume, for purposes of deciding the instant motion, that Mitchell's Step III appeal of Grievance 0897 was timely filed.

As this Court has recognized, "[i]t is axiomatic that proper exhaustion of a prisoner's administrative remedies only serves to exhaust the issues pursued at the administrative level." *Miller v. Velarde*, No. 23-12117, 2024 WL 3331245, at *6 (E.D. Mich. May 13, 2024). "Prisoners cannot grieve some issues and then tack entirely new, unexhausted issues on to their pleadings; the issues raised in the grievance must match the claims raised in the complaint." *Id.*; *see also Tietz v. Corizon Health, Inc.*, No. 20-10814, 2024 WL 1444955, at *6 (E.D. Mich. Apr. 3, 2024) (a prisoner's grievance "must give 'prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint'") (quoting *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006) (citation and internal quotation marks removed)).

Here, Grievance 0897 failed to put prison officials on notice that Mitchell was asserting a claim against NP Barrows related to his decision to take Mitchell off medical hold in the days following his February 2020 surgery. Rather, Mitchell only mentions NP Barrows in the context of asserting a claim against Dr. Lamarca – namely, that Dr. Lamarca "must have cut a nerve that causes [his] right leg to be partially paralyzed." (ECF No. 47-1, PageID.373).

In sum, NP Barrows is not the subject of any act complained about in Grievance 0897, and there is insufficient information or context from which prison officials could reasonably have been put on notice that Mitchell's grievance challenged conduct on the part of NP Barrows. Thus, Mitchell's current claim – that NP Barrows improperly authorized him to be taken off medical hold, leaving him in pain – has not been properly

11

exhausted. *See Ford v. Martin*, 49 F. App'x 584, 585 (6th Cir. 2002) (proper exhaustion requires the plaintiff to have grieved the *specific issues* raised in his lawsuit).

The arguments in Mitchell's response brief do not change the analysis. First, Mitchell notes that he "mention[ed]" NP Barrows in Grievance 0897. As explained above, however, merely mentioning NP Barrows in a grievance is insufficient to exhaust any and all claims Mitchell may have had against him.

Second, Mitchell asserts that, at the time NP Barrows took him off medical hold, he knew Mitchell "was partially physically impaired" because he placed Mitchell on a permanent lower bunk status and "knew that [Mitchell] was not allowed to be bending or twisting nor picking up anything more then 10 ten pounds …." (ECF No. 50, PageID.397). But what NP Barrows may or may not have known regarding Mitchell's limitations immediately following his surgery is not relevant to whether Mitchell *properly exhausted* his Eighth Amendment claim against NP Barrows. Again, even if Mitchell is correct about NP Barrows' knowledge of his restrictions, the salient fact in the exhaustion analysis is that Grievance 0897 does not allege that NP Barrows improperly ignored any post-surgical instructions or prematurely took Mitchell off medical hold.

Finally, Mitchell argues that, in Grievance 0897, he asserted that he was being denied adequate treatment by the "medical staff," which includes NP Barrows. (ECF No. 50, PageID.396-97). However, courts have consistently held that such generic labels are insufficient to properly exhaust claims against individual defendants, like NP Barrows in this case. *See, e.g., Bell v. Admin. Bd. of Claims*, No. 20-10193, 2024 WL 1918328, at *6 (E.D. Mich. Jan. 18, 2024) (where grievance mentioned individual defendant "solely as the

12

transmitter of 'bad news,' including that [the plaintiff's] special accommodation notice for footwear was cancelled or removed[,]" the grievance failed to provide the defendant with notice of the plaintiff's *"legal claims against her"*) (emphasis in original); see also *Mattox v. Edelman*, 851 F.3d 583, 596 (6th Cir. 2017) (rejecting plaintiff's argument that his grievances "generally gave all relevant medical officials notice of his claim that he was receiving inadequate heart treatment" and holding that where an inmate was receiving care, he "can only exhaust claims where he notifies the relevant prison medical staff as to which facets of his care are deficient"). Here, as in *Bell* and *Mattox*, while Grievance 0897 references NP Barrows, it does not allege any misconduct or wrongdoing on his part and therefore does not give NP Barrows notice of Mitchell's claims *against him*. As such, this grievance did not exhaust Mitchell's Eighth Amendment claim against NP Barrows, and NP Barrows is entitled to summary judgment.[9]

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that NP Barrows' Motion for Summary Judgment **(ECF No. 47)** be **GRANTED**.

Dated: October 25, 2024         s/David R. Grand
Ann Arbor, Michigan        DAVID R. GRAND
       United States Magistrate Judge

---

[9] Mitchell submitted one other grievance during the relevant time period, dated October 27, 2021. (ECF No. 47-1, PageID.361). In that grievance, Mitchell alleged that, over the prior two months, he had submitted two medical kites requesting copies of his medical records "to send to [his] lawyer and medical has yet to respond to my requests …." (*Id.*). Mitchell further indicated in this grievance that, on October 21, 2021, he "asked Dr. Barrows regarding [these] medical requests and his response was passive." (*Id.*). This grievance has nothing to do with Mitchell's claim against NP Barrows that "he authorized [Mitchell] to be taken off medical hold," and therefore does not exhaust that claim. (ECF No. 13, PageID.21).

13

## **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 25, 2024.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
